Thomas Edward BERNARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 56838.

Court of Criminal Appeals of Texas, Panel No. 2.

Jan. 18, 1978.

Rehearing en banc Denied June 14, 1978.

**576**

James P. Finstrom, Dallas, for appellant.

Henry M. Wade, Dist. Atty., William M. Lamb, Hugh Lucas and John Ovard, Asst. Dist. Attys., Dallas, for the State.

Before ONION, P. J., and DOUGLAS and ODOM, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from an order revoking probation. On March 8, 1974 appellant entered a plea of guilty before the court to the offense of unlawful possession of heroin. The court assessed punishment at three (3) years' imprisonment, but suspended the imposition of the sentence and placed the appellant on probation for six (6) years. Among the probationary conditions was the requirement that he "(a) Commit no offense against the laws of this or any other State or the United States."

On April 25, 1977 the State filed a three count motion to revoke probation. At the hearing on said motion on April 29, 1977 the State elected to proceed only on the second count, which read:

". . . on or about the 14th day of February, 1977, in Dallas County, Texas, THOMAS EDWARD BERNARD did then and there knowingly and intentionally deliver to W. J. Hunt a controlled substance, to-wit: Heroin."

Following the hearing, the court revoked probation. Sentence of three (3) years was imposed and notice of appeal was given.

In his sole ground of error appellant urges the "trial court erred when it refused to order the prosecution to disclose the name of an informant who participated in setting up the alleged offense and was shown to be a material witness to the transaction relied upon by the State to revoke appellant's probation."

Officer W. J. Hunt testified at the revocation hearing that on February 14, 1977 at approximately 7:10 p. m. he went to appellant's Dallas residence at 3321 Seaton to purchase heroin in his capacity as an undercover narcotics agent for the Dallas police department. He testified that after appellant admitted him into the house he purchased from appellant for $50.00 a small balloon containing a brown powder substance. After the purchase, Hunt delivered the balloon to Dallas police officers Watson and Reed for ultimate delivery to the Dallas Criminal Investigation Lab where it was determined that the balloon contained heroin.

It does not appear that Hunt had any previous contact with the appellant. He explained that a confidential informer had called the appellant and had made arrangements for Hunt to come by appellant's residence. He stated that the informer had called the appellant about two or three hours prior to the "buy" and had assured Hunt about 4:30 or 5 p. m. on February 14, 1977 that the arrangements had been made and that appellant was expecting Hunt. Hunt was then asked on cross-examination:

"Q . . . Could you have gone to the residence at 3221 (sic) Seaton on February 14, 1977, at 7:10 P.M., without the call from the informant?

"A No, sir, I don't think I could have."

Appellant testified in his own behalf that he left his residence on February 14, 1977 at approximately 10 a. m. with his brother and a friend, W. J. Kennedy, in Kennedy's car. Appellant claims that the three first went to a tropical fish store in Pleasant Grove so

appellant could buy some goldfish for his aquarium. This store was closed, so the men then drove to South Dallas to drop off appellant's shoes to be repaired. Appellant claims that the trio then went to a drive-in restaurant for lunch. After lunch, they drove to another tropical fish store near the intersection of Kiest and Polk Streets, where they spent between one and two hours. By this time it was supposedly near 4 p. m. The three then rode around until sunset, at which time they stopped at a Target store on Loop 12, where appellant claims to have purchased an air rifle and some Valentine candy for his wife. Appellant estimated they left the store around 8:30 or 9 p. m. and returned to his home on Seaton around 9:15 p. m. After their return, appellant's wife made some sandwiches, and shortly thereafter Kennedy decided to return to his home. Appellant testified no one came to his home on the date in question to buy heroin and that he did not sell anyone heroin.

Kennedy, a Dallas school teacher, substantially corroborated appellant's version of the day's outing, with the exception that he remembered going to a K-Mart rather than the Target store. He testified that these two stores were in the same proximity to Loop 12.

Appellant's common law wife, Gail Tucker Ellis, also corroborated appellant's alibi and Kennedy's testimony with her version of what happened on February 14th.

When appellant's counsel sought to have the prosecution reveal the name of the informer, his motion was overruled.

Appellant contends that if the alleged offense occurred as contended by the State, then it is clear that the unidentified informer initiated the offense by his telephone call, and that the offense would not have occurred except for the informer's participation in making the necessary arrangements.

■ This court has repeatedly held that the identification of an informer need not be disclosed unless: (1) the informer participated in the offense; (2) was present at the time of the offense or arrest, or (3) was otherwise shown to be a material witness to the transaction or as to whether appellant knowingly committed the act charged. *Andrew v. State*, 558 S.W.2d 876 (Tex.Cr.App. 1977); *Hardeman v. State*, 552 S.W.2d 433 (Tex.Cr.App.1977); *Barber v. State*, 511 S.W.2d 937 (Tex.Cr.App.1974); *Enriquez v. State*, 501 S.W.2d 117 (Tex.Cr.App.1973); *Bueno v. State*, 501 S.W.2d 339 (Tex.Cr. App.1973); *Sessions v. State*, 498 S.W.2d 933 (Tex.Cr.App.1973). See also *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

The State argues that no error was shown in not disclosing the informer's identity, citing *Carmouche v. State*, 540 S.W.2d 701 (Tex.Cr.App.1976), and *Willoughby v. State*, 481 S.W.2d 893 (Tex.Cr.App.1972). We disagree; those cases are clearly distinguishable. In *Carmouche v. State, supra,* unlike the instant case, the informant did not initiate or in any manner participate in the offense. In *Willoughby v. State, supra,* the accused already knew the name of the so-called informant when he was introduced to an undercover police officer. In fact, before the first sale of marihuana in that case, the accused had investigated the informant's background. Unlike the present case, the defendant there had the opportunity, which he did not act upon, to call this person as a witness. Further, in *Willoughby*, at the time of the motion for disclosure and its denial, the evidence upon which Willoughby relied on appeal had not yet been developed and the motion for disclosure was never renewed. This is unlike the instant case.

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court stated:

> ". . . Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353 U.S. at 60–61, 77 S.Ct. at 628.

The Supreme Court further stated:

"Whether a proper balance [between public interest in nondisclosure and the individual's right to prepare his defense] renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 62, 77 S.Ct. at 629.

The instant case was closely contested. The State's theory was that appellant sold heroin at his residence to an undercover agent about 7:10 p. m. on the date in question. The appellant claimed alibi and testified he was not home at that time and had not been home most of the day. He related he did not admit strangers to his home, and denied he ever saw the undercover agent or sold heroin to anyone. Under the State's evidence, the informer initiated the arrangements for the delivery of heroin. He was in a unique position to confirm or deny he had made such arrangements, to shed light on the defense of alibi, and on whether appellant knowingly committed the act charged.

We conclude on these facts that the trial court erred in refusing to order the disclosure of the informer's identity. *Andrew v. State, supra* ; *Ex parte Lozano*, 542 S.W.2d 408 (Tex.Cr.App.1976); *James v. State*, 493 S.W.2d 201 (Tex.Cr.App.1973). See and cf. *Stein v. State*, 548 S.W.2d 61 (Tex.Cr.App.1977).

The judgment is reversed and the cause remanded.