In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-01-01057-CR
____________

GARFIELD ALDINGTON CAMPBELL, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 263rd District Court 
Harris County, Texas
Trial Court Cause No. 855276
 



O P I N I O N
          A jury convicted appellant, Garfield Aldington Campbell, of forgery of a
government instrument. See Tex. Pen. Code Ann. § 32.21(b), (e) (Vernon Supp.
2002). After appellant pled true to two enhancement paragraphs alleging prior
convictions for possession of marihuana and attempted illegal investment, the jury
assessed punishment at 60 years in prison. We affirm.
Background
          Appellant was tried for this offense before two juries. The first trial resulted
in a hung jury. The second trial resulted in a conviction, from which appellant
appeals.
          In September 2000, as appellant was being booked at the station on an
outstanding assault warrant, Harris County Sheriff’s Department Deputy Preston
Foose entered to book another individual on an unrelated case. The detective with
appellant asked Deputy Foose to look at two Social Security cards that Deputy Foose
had seen the detective remove from appellant’s wallet. The first card, which bore the
name “Garfield Aldington Campbell,” appeared to be forged because it had a
mistyped letter, its color was too light, and the card used a typeface different from
that normally used. The second card, which bore the name “Garfield Aldington
Campbell, Jr.,” appeared to be authentic. The first card did not bear a number
belonging to appellant, but the second card did, even though, according to the deputy,
appellant had claimed that the second card belonged to his dead infant son. 
According to the deputy, appellant admitted that he had bought the first card for $800
from a friend. The deputy then arrested appellant for possession of a forged
government document.
          Appellant testified as the sole defense witness. Appellant claimed that the
second card had belonged to his dead son and that appellant carried it for sentimental
reasons; that appellant had never seen the first card, did not know it was in his wallet,
and had not forged it; that he did not tell Deputy Foose that he had bought the first
card from a friend; and that appellant did not have any Social Security card of his
own. Appellant also insinuated that his wife and her alleged boyfriend had planted
the document in his wallet to frame him and that Deputy Foose might have conspired
with them.
Ineffective Assistance of Counsel
          In a single issue, appellant claims his trial counsel was ineffective at the guilt
stage, in violation of the United States Constitution. See U.S. Const. amends. VI,
XIV.
A.      Standard of Review and Burden of Proof
          The standard for evaluating claims of ineffective assistance of counsel is set
out in Strickland v. Washington, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 2064-69
(1984). See Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); Gamble
v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). 
Appellant must show that (1) counsel’s performance was so deficient that he was not
functioning as acceptable counsel under the Sixth Amendment and (2) there is a
reasonable probability that, but for counsel’s error or omission, the result of the
proceedings would have been different. Strickland, 466 U.S. at 687-96, 104 S. Ct.
at 2064-69; Thompson, 9 S.W.3d at 812; Gamble, 916 S.W.2d at 93. A “reasonable
probability” that the result would have been different means a probability sufficient
to undermine confidence in the outcome. Thompson, 9 S.W.3d at 813; Jackson v.
State, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Effective assistance of counsel
does not mean errorless counsel. See Saylor v. State, 660 S.W.2d 822, 824 (Tex.
Crim. App. 1983). In determining whether counsel was ineffective, we consider the
totality of the representation and the circumstances of the particular case. Thompson,
9 S.W.3d at 813.
          The defendant must prove ineffective assistance of counsel by a preponderance
of the evidence. Id.; Jackson, 973 S.W.2d at 956. The defendant must overcome the
presumption that, under the circumstances, the challenged action might be considered
sound trial strategy. Thompson, 9 S.W.3d at 813; Gamble, 916 S.W.2d at 93. We
will normally not speculate to find trial counsel ineffective when the record is silent
on counsel’s reasoning or strategy. See Gamble, 916 S.W.2d at 93. However, “in the
rare case where the record on direct appeal is sufficient to prove that counsel’s
performance was deficient, an appellate court should obviously address the claim .
. . .” Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000) (emphasis
added).
B.      Allegations of Ineffective Assistance of Counsel
 
          1.       Failure to Make Proper Continuance Motion

          Appellant first argues that counsel was deficient for moving for an continuance
without meeting the statutory requirements. 
          Just before voir dire began in the second trial, appellant’s counsel orally moved
for a continuance:
Counsel:The defendant is not ready at this time, and we are asking
the Court to continue this case. . . . And it was a hung jury
yesterday. And, one, we need the transcript, the trial
transcript. It is not going to be here until 12:00 o’clock. 
That’s what the court reporter says. I already paid the
court reporter.
 
Court:I talked to the court reporter in this matter and she
informed me it will be ready by noon. This case was heard. 
It lasted about 45 minutes. And you were here and heard
the evidence and Mr. Campbell heard the evidence and it
will be here for cross-examination.
 
Counsel:And, also, Your Honor, there are certain witnesses that we
would want to call. I might need them. I need to do a bill
based on the information that came out in the trial.
 
Court:Well, you knew about that yesterday. I hope you got the
subpoenas out, and the Court will see that you get
expedited service on those matters.
 
Counsel:I have subpoenaed one. That’s what I am saying that we
are not able to locate the witness but we are aware of the
witness. I wanted to just in case it comes back on appeal
on this case but there are witnesses. There are leads that I
have gotten dealing with this case that I need to pursue as
a lawyer, and I don’t think I could effectively represent Mr.
Campbell if I were not able to pursue it based on that
information.

The trial court denied the motion. The State began its case-in-chief about five and a
half hours later. At no time during trial did appellant’s counsel renew his request for
a continuance properly or make an offer of proof on the needed witnesses. 
           A continuance motion must generally be written and sworn to preserve error. 
See Tex. Code Crim. Proc. Ann. arts. 29.03, 29.08 (Vernon 1989); Dewberry v.
State, 4 S.W.3d 735, 755-56 (Tex. Crim. App. 1999). When based on a witness’s
absence, the motion must also recite certain information about the witness, his
expected testimony, and the diligence used to procure him, among other things. See
Tex. Code Crim. Proc. Ann. art. 29.06 (Vernon 1989). Counsel’s oral motion did
not meet these criteria. 
          However, nothing in the record shows, in the five and a half hours between the
motion and the State’s case-in-chief, whether these witnesses had been located,
whether they were then available, or whether additional subpoenas had issued.


 More
importantly, the record does not reveal who the witnesses were or to what they would
have testified. Accordingly, assuming without deciding that counsel performed
deficiently, we cannot know if the trial’s outcome would have been different without
knowing whether the witnesses’ testimony would have favored appellant and whether
they were available at the time of trial. See Reese v. State, 905 S.W.2d 631, 635-36,
638 (Tex. App.—Texarkana 1995, pet. ref’d) (after concluding counsel’s continuance
motion was inadequate for being unsworn and not reciting matters required when its
basis was witness unavailability, holding defendant did not meet burden of showing
prejudice under Strickland because content of witness’s testimony not shown); cf.
Akin v. State, 981 S.W.2d 297, 301-02 (Tex. App—Texarkana 1998, no pet.)
(overruling ineffectiveness challenge based on counsel’s failure to request
continuance for witnesses who were absent due to mistake in subpoenas’ return date
because defendant admitted one witness knew nothing about the case, another witness
actually testified, and nothing showed two other witnesses had helpful knowledge or
were available).
          2.       Objection Based on Inapplicable Rule of Evidence
          Appellant next argues that his counsel was deficient because counsel objected
to State’s exhibit three—a certified document from the Social Security
Administration, which stated that the Social Security number on the first card did not
belong to appellant—under the wrong rule of evidence. 
          The State offered exhibit three under rule of evidence 902(1), which allows
domestic, public documents under seal to be admitted without an authenticity
predicate. See Tex. R. Evid. 902(1). Appellant’s counsel objected he had not
received 14 days’ notice. The trial court overruled the objection.
          Rule 902(1) does not require that the State file a document under seal with the
court or serve it on the defendant.


 See id. Appellant does not argue that the
document was inadmissible, and the trial court appears to have been within its
discretion in admitting the document under rule 902(1). See id. Rather, appellant
argues that counsel’s objection shows that counsel did not understand the rules of
evidence. Even if counsel did not understand rule 902(1), appellant does not show
how he was harmed by that shortcoming because the document was still admissible. 
Appellant explains further that, because counsel “believed a document important to
the prosecution to be inadmissible [under rule 902(10)], he could not possibly advise
Appellant that the State would be able to prove this essential element of its case.” 
Nothing in the record shows how counsel advised appellant. To consider this
argument would require speculation, which we decline to do. See Gamble, 916
S.W.2d at 93.
          3.       Failure to Object to Deputy Foose’s Testimony Concerning
Appellant’s Statement

          Appellant also argues that counsel was deficient for not objecting to Deputy
Foose’s testimony of a statement by appellant showing intent. 
          The State had to prove that appellant forged the first Social Security card with
the intent of harming or defrauding another. See Tex. Pen. Code Ann. § 32.21(b). 
The statute defines “forge” to mean
(A)to alter, make, complete, execute, or authenticate any writing so
that it purports:
 
(i)to be the act of another who did not authorize that act;
 
(ii)to have been executed at a time or place or in a numbered
sequence other than was in fact the case; or
 
(iii)to be a copy of an original when no such original existed;
 
(B)to issue, transfer, register the transfer of, pass, publish, or
otherwise utter a writing that is forged within the meaning of Paragraph
(A); or
 
(C)to possess a writing that is forged within the meaning of
Paragraph (A) with intent to utter it in a manner specified in Paragraph
(B).

See id. § 32.21(a)(1)(A)-(C). 
          On direct examination, Deputy Foose concluded that the first Social Security
card was forged for the reasons stated earlier. He also testified that appellant had
easy access to the fake card in his wallet. The deputy then testified as follows:
State:Did you form an opinion of whether or not the defendant
intended to use to [sic] utter those cards?
 
Deputy:Yes, sir.
 
Counsel:Object, Your Honor, that’s a legal question.
 
Court:That will be overruled. He may state an opinion.
 
State:And what was your opinion?
 
Deputy:Due to the name and under the circumstances that I found
out about the defendant and something else the defendant
had told me himself, it came to my conclusion that he was
going to use it for possibly illegal purposes.
 
. . . .
 
State:Did you form an opinion as to whether or not the
defendant knew that those cards were forged?
 
Deputy:Yes, sir.
 
State:What was that opinion?
 
Deputy:Something he had stated to me about it being forged.
 
State:Do you believe that he knew it was forged?
 
Deputy:Yes, sir.

(Emphasis added.)

          Appellant complains that his counsel should have objected to the italicized
portions quoted above because (1) they called for speculation, (2) the deputy had not
been qualified as an expert, (3) his opinion was irrelevant and more prejudicial than
probative, and (4) nothing showed that the deputy had complied with Code of
Criminal Procedure article 38.22 regarding oral statements. See Tex. Code Crim.
Proc. Ann. art. 38.22, § 3 (Vernon Supp. 2002) (setting out prerequisites for use of
an accused’s oral statements made during custodial interrogation).
          As shown above, counsel had objected earlier that the State’s question—“Did
you form an opinion of whether or not the defendant intended to use to [sic] utter
those cards?”—was a “legal question.” However, nothing shows counsel’s strategy
in not renewing that objection, or raising new objections, to the deputy’s complained-of answers. We normally do not speculate on counsel’s strategy regarding whether
to make trial objections. See, e.g., Moore v. State, 4 S.W.3d 269, 275-76 (Tex.
App.—Houston [14th Dist.] 1999, no pet.) (holding defendant did not show trial
counsel was deficient for not objecting to testimony of extraneous offenses, the
admissibility of which was “questionable,” when, among other things, nothing in
record showed counsel’s strategy); see also Gamble, 916 S.W.2d at 93. 
          Our refraining from speculating is especially appropriate here because we can
think of at least one plausible strategy for counsel’s not objecting. Compare
Robinson, 16 S.W.3d at 813 n.7 (“[I]n the rare case where the record on direct appeal
is sufficient to prove that counsel’s performance was deficient, an appellate court
should obviously address the claim . . . .”). The same counsel represented appellant
in the first trial, which resulted in a hung jury. Although we have no reporter’s record
from the first trial, the jury’s notes and the docket sheet in the clerk’s record reveal
that appellant, in fact, testified. During deliberations, the first jury advised the trial
court that its “point of disagreement revolves around the credibility of the witnesses. 
All 12 [jurors] are adamant about which witness to believe.” The jury then
specifically asked to see appellant’s cross-examination testimony about “having the
fake SSN card.” The trial court eventually declared a mistrial because the jurors
could not agree on a verdict. It thus appears that appellant’s testimony may have
swayed some jurors.
          Appellant testified immediately after the State closed. One plausible reason for
counsel’s allowing appellant to testify is that (1) as shown by appellant’s testimony
and his counsel’s closing argument, appellant’s theory of the case was that someone
had planted the forged card in his wallet to frame him, not that the card was not
forged; (2) of the witnesses present, only appellant could testify in support of that
theory; and (3) appellant’s testimony about “having the fake SSN card” may have
swayed some jurors in the first trial. If appellant testified in support of his “framing”
theory in the second trial, the State could impeach him on rebuttal or cross-examination with his prior inconsistent statement to Deputy Foose. See Tex. R. Evid.
613(a), 801(e)(2)(A). If, by the time Deputy Foose testified, the decision had been
made for appellant to testify to being “framed,” counsel could have decided not to
object to the deputy’s above-quoted testimony because the deputy’s testimony as to
the statement’s existence and its content would have been admissible for
impeachment on rebuttal. This is a plausible trial strategy, at least, whether or not it
was counsel’s actual strategy. And that plausible strategy, which focused on the
content of appellant’s statement to the deputy, would not necessarily have been
inconsistent with counsel’s one earlier objection to the asking of a “legal question,”
which focused on the deputy’s opinion based on appellant’s statement. In any event,
because we can imagine at least one trial strategy, this is not one of those rare
situations that shows deficient performance in the absence of evidence of counsel’s
actual strategy.


 Compare Robinson, 16 S.W.3d at 813 n.7.
           4.       Offering the Entire Offense Report
          Appellant next argues that counsel was deficient for admitting the entire
offense report, which referred to an extraneous offense and also a statement by
appellant showing intent.
          Counsel repeatedly tried to cross-examine Deputy Foose by asking whether the
offense report recited that the second Social Security card was appellant’s. Each
time, the trial court sustained the State’s objection to testifying to a document not in
evidence and to improper impeachment. After one such objection, the following
discussion occurred:
 
Counsel:I am just—I would like to admit the offense report for the
limited purpose of.
 
Court:There is no limited purpose. It’s admitted or not admitted.
 
Counsel:An offense report is not technically admissible.
 
State:If you wish to admit it, I will not object.

Finally, counsel moved to admit the entire report. 
          Counsel then had the deputy read from the report that the second card was
confirmed as appellant’s, even though appellant had claimed that it was not his. On
cross-examination, the State had the deputy read from the report that “the defendant
stated he had bought the [first] card . . . from a friend for $800 but could not produce
his name.” The report also stated that appellant was at the police station on an
outstanding assault warrant, although this information was not published to the jury.
          We hold that appellant has not met his burden of showing harm under the
second prong of Strickland. Appellant does not complain on appeal that trial counsel
was ineffective for allowing the deputy to testify that “due to . . . something else the
defendant had told me himself, it came to my conclusion that he was going to use it
for possibly illegal purposes.” We have also already held that appellant has not
shown that counsel was ineffective for allowing the deputy to testify shortly
afterwards that appellant “stated to me about [the first card’s] being forged.” 
(Emphasis added.) The offense report conveyed the same information, albeit in more
detail. Additionally, nothing shows that the extraneous assault offense was published
to the jury or that the jury requested the report during deliberations, and the State did
not mention the extraneous assault offense during argument. See Tex. Code Crim.
Proc. Ann. art. 36.25 (Vernon 1981) (“There shall be furnished to the jury upon its
request any exhibits admitted as evidence in the case.”); Novak v. State, 837 S.W.2d
681, 685 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d) (holding no harm shown
under Strickland for counsel’s admitting offense report that contained prior
convictions because, among other reasons, nothing showed jury read report or that
report was sent to jury, State did not mention prior convictions in argument and
briefly asked only one witness about them, and defense counsel made only one,
oblique reference to the convictions in closing argument).
          For these reasons, we overrule appellant’s sole issue.

 Conclusion
          We affirm the judgment of the trial court.




     Tim Taft
     Justice

Panel consists of Justices Taft, Alcala, and Price.




Do not publish. Tex. R. App. P. 47.4.